**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ENRIQUE MONTANO, | ) | CASE NO. 25-11680 |
| | ) | |
| DEBTOR. | ) | HON. DEBORAH L. THORNE |
| | ) | (Will County) |

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on **Wednesday, March 26, 2026, at 9:30 a.m.**, I will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, **either** in courtroom 682 of the Everett McKinley Dirksen United States Courthouse, 219 S. Dearborn Street, Chicago, IL 60604 **or** electronically as described below, and present the **Motion of the United States Trustee to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3),** a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

**To appear by Zoom using the internet**, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and passcode.

**To appear by Zoom using a telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and passcode.

**Meeting ID and passcode.** The meeting ID for this hearing is 160 9362 1728, and no passcode is required. The meeting ID and passcode can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

*/s/ Jeffrey Gansberg*
Jeffrey Gansberg, Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-3327

## CERTIFICATE OF SERVICE

I, Jeffrey L. Gansberg,

☒ an attorney, certify - or –

[  ] a non-attorney, declare under penalty of perjury under the laws of the United States of America

that on March 13, 2026, I served a copy of this notice, attached motion, and proposed order on the ECF Registrants shown below *via* the Court's Electronic Notice for Registrants and *via* First Class US Mail on all other entities shown at the addresses listed below.

*/s/ Jeffrey L. Gansberg*

## SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants:**

- Manuel A. Cardenas     manuel@manuelcardenas.law, manuelantonio_cardenas@yahoo.com
- Jeffrey L. Gansberg     jeffrey.l.gansberg@usdoj.gov
- Daniel J Winter     trustee@dwinterlaw.com, ecf.alert+Winter@titlexi.com,rebecca@dwinterlaw.com

**Parties Served via First Class Mail:**

Enrique Montano
640A Rance Rd.
Oswego, IL  60543

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| ENRIQUE MONTANO, | ) | CASE NO. 25-11680 |
| | ) | |
| DEBTOR. | ) | HON. DEBORAH L. THORNE |
| | ) | (Will County) |

**U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE**
**PURSUANT TO 11 U.S.C. § 707(b)(1) and (b)(3)**

NOW COMES ADAM G. BRIEF, the Acting United States Trustee for the Northern District of Illinois (the "U.S. Trustee"), by his attorney, Jeffrey L. Gansberg, and hereby moves this Court to enter an order dismissing the above-captioned Chapter 7 case pursuant to 11 U.S.C. § 707(b)(1) and (b)(3). In support of the Motion, the U.S. Trustee states to the Court as follows:

**INTRODUCTION**

1. The Court should dismiss this case because the totality of the circumstances indicate that it is an "abuse of the provisions of this chapter[.]" 11 U.S.C. § 707(b)(3). Rather than repay his creditors, the Debtor includes a wage garnishment as a deduction from income even though its collection is stayed by the bankruptcy filing and the underlying debt may be discharged. Similarly, the Debtor prefers himself over his creditors by making voluntary contributions to a retirement plan and deducting those contributions from his income. Lastly, the Debtor included improper support payments to his father.

**JURISDICTION**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) which this Court may hear and

determine pursuant to Internal Operating Procedure 15(a) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

3. Movant is the U.S. Trustee for the Northern District of Illinois and is charged with supervising the administration of bankruptcy cases under 28 U.S.C. § 586(a). The U.S. Trustee has standing to bring this Motion under 11 U.S.C. § 307 and brings this Motion pursuant to 11 U.S.C. § 707(b).

4. The U.S. Trustee's deadline to file a motion to dismiss under Section 707(b) of the Bankruptcy Code is March 17, 2026, so this Motion is timely.

## BACKGROUND

5. Enrique Montano (the "Debtor") initiated this case on July 31, 2025  (the "Petition Date") by filing a petition for relief under Chapter 7 of the Bankruptcy Code. Dkt No. 1. The Debtor is represented by Manuel A. Cardenas. Dkt No. 1, p. 7 of 43.

6. With the petition, the Debtor filed his Schedules and Statement of Financial Affairs (the "SOFA"). *See* Dkt No. 1

7. On August 13, 2025, the Debtor filed an Amended SOFA and Schedule E/F.  *See* Dkt Nos. 9 and 10.

8. On November 25, 2025, the U.S. Trustee filed a motion seeking a Rule 2004 examination of the Debtor.  Dkt No. 24.

9. The Court granted the U.S. Trustee's motion on December 4, 2025.  Dkt No. 25.

10. On December 4, 2025, the U.S. Trustee issued a subpoena upon the Debtor requesting the production of certain documents by January 9, 2026 (the "Subpoena").

11.     On January 16, 2026, the Debtor produced some documents responsive to the Subpoena.[1]  The Debtor produced additional documents on February 2, 2026, and again on February 12, 2026.

12.     The Debtor has primarily consumer debt.  Dkt No. 1, p. 6 of 43.

13.     The Debtor's Amended Schedule E/F shows the Debtor has $83,319.91 in nonpriority unsecured debt. Dkt No. 10, p. 4 of 4.

14.     According to Schedule I, the Debtor is employed as a nurse at Edward Hospital earning $6,563.46 in monthly gross income, or $78,761.52 annually.  Dkt No. 1, p. 23 of 43.

15.     Although completing both Schedule I and Schedule J, the Debtor included improper deductions from his wages and improper expenses on those Schedules.

16.     The Debtor included improper payroll deductions totaling $1,457.60 on Schedule I -- a $933.83 wage garnishment and a $523.77 voluntary contribution to his retirement plan.  *Id*. p. 24 of 43.

17.     The Debtor also included an improper expense on Schedule J – a payment to and for the benefit of his father.  *See Id.* at p. 26.

### **RELIEF REQUESTED**

18.     By this Motion, the U.S. Trustee respectfully requests entry of an order pursuant to Section 707(b)(1) and Section 707(b)(3): (i) dismissing the above-captioned Chapter 7 case for abuse based on the totality of the circumstances and (ii) granting such other relief as the Court deems just and proper.

---

[1] The U.S. Trustee does not believe that the production is complete.  Nonetheless, based on the information available to the U.S. Trustee, he believes this motion is well founded and can be brought given the current posture of the case.

**BASIS FOR RELIEF**

**I.      Applicable Legal Standard**

19.      Section 707(b)(1) of the Bankruptcy Code permits the dismissal of a chapter 7 debtor's case if granting relief would be an abuse of the provision of this chapter. *In re Smith*, 2016 WL 7441605, at *3 (Bankr. N.D. Ill. Dec. 27, 2016).  Under Section 707(b)(3), the Court should dismiss a debtor's case if it finds that the totality of the circumstances of the debtor's financial situation demonstrates abuse.  Section 707(b)(3) directs bankruptcy courts to consider whether the bankruptcy case is an "abuse" of the Chapter 7 process based on factors other than those addressed by the Means Test in Section 707(b)(2).  "Section 707(b)(2) creates an objective test under which some cases are presumed abusive.  Section 707(b)(3) permits dismissal even if a debtor passes the objective test, setting up a contrasting 'totality of the circumstances' test that requires a more subjective, holistic assessment of the debtor and their circumstances." *In re Lowe*, 561 B.R. 688, 690 (Bankr. N.D. Ill. 2016) *see also*, *In re Victor & Stacy Watts*, 557 B.R. 640, 646 (Bankr. N.D. Ill. 2016); Hon. Eugene R. Wedoff (ret.), *Judicial Discretion to Find Abuse Under § 707(b)(3)*, Am. Bankr. Inst. J., April 2006, at 1, 54 ("Section 707(b)(3) requires judges, when an abuse motion is raised, to determine the debtor's actual financial condition, including debt-paying ability. Ultimately, even when the means test does not presume abuse, genuinely wealthy debtors may be denied chapter 7 relief").

20.      Specifically, the Court "shall consider" whether the case was filed in "bad faith," *See* 11 U.S.C. § 707(b)(3)(A), or whether "the totality of the circumstances of the debtor's financial situation…demonstrates abuse." See 11 U.S.C. § 707(b)(3)(B).  In analyzing whether dismissal of a case is warranted under the totality of the circumstances test, courts focus on several factors, including whether the debtor has the ability to repay a portion of his or her debts.

4

*See In re Bacardi*, 2010 WL 54760, at *3 (Bankr N.D. Ill. Jan. 6, 2010) (noting that ability to repay debts standing alone could be sufficient to warrant dismissal, although other facts might be relevant).

21.     The primary factor when assessing abuse under Section 707(b)(3) is the debtor's ability to fund a chapter 11 or chapter 13 plan to repay his or her creditors. *See Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 437 (6th Cir. 2004) (finding substantial abuse [under the former, lower standard] where debtors had ability to pay 14% dividend to unsecured creditors); *In re Green*, 934 F.2d 568 (4th Cir. 1991); *In re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010). In *Bacardi*, 2010 WL 54760,*5 , the Court concluded that a debtor's ability to pay, without more, was a sufficient basis to dismiss a Chapter 7 case under Section 707(b)(3).  The *Bacardi* court also noted that the "raw percentage of unsecured debt a debtor can conceivably repay in a chapter 13 or chapter 11 case is not dispositive of abuse . . ." *Id*.

22.     Additional factors to be considered are: (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *Lorenca*, 422 B.R. at 669 (*citing In re Cutler*, Bankr. No. 08–15568–AJM–7A, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009)).

## II. The Debtor's Case Should be Dismissed Under 11 U.S.C. § 707(b)(3)

23.     The Debtor's case is an abuse of the provisions of Chapter 7 because he has sufficient income to make a substantial distribution to his creditors.  "The principal purpose of

the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279 (1991)). Here, the Debtor is not financially "unfortunate." Rather, this Debtor is preferring himself over his creditors. The elimination of improper deductions from income would enable the Debtor to pay a large portion of his unsecured obligations.

**The Debtor Improperly Includes a Wage Garnishment and Voluntary 401(k) Contribution as Deductions from Income**

24.     The Debtor's improper payroll deductions include a wage garnishment and voluntary 401(k) retirement fund contributions, which, collectively, total $1,457.60 per month.

25.     The Debtor scheduled a $933.83 wage garnishment deduction on Schedule I. However, because of the bankruptcy filing, the wage garnishment on account of a pre-petition debt is subject to the automatic stay and is not collectible during the case. 11 U.S.C. § 362(a) *see generally*, *In re Bailey*, 428 B.R. 694, 698 (Bankr. N.D. W.Va. 2010) (failure to release wage garnishment post-petition can be a willful violation of the automatic stay); *In re Gray*, 97 B.R. 930, 934 (Bankr. N.D. Ill. 1989); s*ee also*, *In re Butler*, Case No. 24-16719, 2026 WL 86472 at *1 (Bankr. N.D. Ill. Jan. 7, 2026) (reciting in background discussion that service of wage garnishment post-petition violated automatic stay). In addition, the post-petition payment of a pre-petition unsecured claim violates multiple sections of the bankruptcy code. See e.g. *In re Smurzynski*, 72 B.R. 368, 371 (Bankr. N.D. Ill. 1987). Therefore, the $933.83 deduction must be excluded and that amount must be included in the Debtor's disposable income for a Section 707(b)(3) analysis. *See In re Smith*, No. 15 B 36486, 2016 WL 7441605 at *5 (Bankr. N.D. Ill.

Dec. 27, 2016) (expenses that are not being paid are relevant in determining ability to pay creditors for Section 707(b)(3) analysis).

26.    The Debtor also scheduled a monthly voluntary 401(k) contribution in the amount of $523.77.  However, the Debtor is not entitled to prefer himself over his unsecured creditors.

27.    Several courts have determined that voluntary retirement contributions are *per se* unreasonable payroll deductions for Chapter 7 debtors when determining their ability to repay creditors. *See, e.g.*, *In re Parada*, 391 B.R. 492, 503 (Bankr. S.D. Fla. 2008) (voluntary contributions to IRA not allowable expense in chapter 7); *In re Masella*, 373 B.R. 514, 521 (Bankr. N.D. Ohio 2007) ("401(k) contribution and loan repayments are not permissible deductions when determining an 'ability to pay' under § 707(b)"); *In re Smith*, 585 B.R. 168, 179 (Bankr. W.D. Okla. 2018) ("[T]he great majority of cases hold that BAPCPA did not alter the court's obligation to consider retirement contributions as 'disposable income' when determining ability to pay under § 707(b)(3).").

28.    Other courts, in determining the reasonableness of voluntary retirement contributions, consider the following factors: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings; (3) the debtor's annual income; (4) the debtor's budget; (5) the amount of the contributions; (6) the needs of the debtor's dependents; and (7) any other constraints making contributions a reasonably necessary expense. *In re Klinger*, 2021 Bankr. LEXIS 584, 2021 WL 955928, *10–11 (Bankr. N.D. Ohio Mar. 12, 2021).

29.    Upon information and belief, the Debtor is not on the eve of his retirement and already has an established 401(k) account funded with $11,483 as of the Petition Date.  The Debtor's Schedule I indicates that he earns approximately $78,700 per year.  His Schedule J indicates that he has a positive disposable income of $6.62 after the wage garnishment deduction

from income, the voluntary contribution to his retirement account, and a monthly support payment to his father.  His disposable income increases after the improper wage garnishment deduction is removed.  The increase in income if his voluntary 401(k) retirement contributions are included permits a higher distribution to his creditors.

30.     The Debtor's payroll deductions for contributions to his retirement plan should be disallowed because he should not be entitled to prefer himself to his creditors.  When those payments are disallowed, the Debtor's net monthly income increases by $523.77 a month.

31.     In total, the Debtor's deductions from income on Schedule I should be reduced by $1,457.60, increasing his net income by the same amount.  Without any belt-tightening of the Debtor's expenses, after adding back only the wage garnishment and the voluntary retirement account contributions, the Debtor has $1,457.60 of monthly disposable income, which will allow him to repay a material portion of his unsecured debt.

32.     Combining the improper deductions from income with the Debtor's net income on his Schedule J,  the Debtor is able to pay $1,464 a month to unsecured creditors.  *See* Declaration of Andrew Hunt, attached hereto as **Exhibit A**.  That payment will yield an approximately 70%  dividend to his creditors over the course of a three year plan.  Accordingly, this case is abusive under the totality of the circumstances. See*, e.g.*, *Behlke*, 358 F.3d at 437 (finding substantial abuse where debtors had ability to pay 14% dividend to unsecured creditors).

### III.     The Other Factors Do Not Negate a Finding of Abuse

33.     The other relevant factors court look to, include: (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's

8

schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *See Lorenca*, 422 B.R. at 669.  These factors support dismissal of this case.

34.     With respect to the first factor regarding the events leading to the filing of the case, it does not appear that the Debtor filed this case due to a sudden calamity, illness, or disability. *See In re Mooney*, 313 B.R. 709, 717 (N.D. Ohio 2002) ("this is not a case where Debtors attempt to discharge unsecured debt was caused by a catastrophic event but rather, by their own poor decisions). According to the Debtor's Schedule I, he does not anticipate any significant changes to his income in the next year and there does not appear to be any unanticipated problem or sudden financial calamity that forced the Debtor to file the present bankruptcy case.

35.     To conclude, the Debtor in this case included improper deductions from income which funds he could use pay his creditors a substantial dividend under a chapter 13 plan.

36.     Given the totality of the circumstances, the Court should dismiss this case as an abuse pursuant to Section 707(b)(3).

**WHEREFORE**, the U.S. Trustee requests the Court to enter an order dismissing the

Debtors' case pursuant to Section 707(b)(3)(B) of the Bankruptcy Code and for such other relief

as is just.

RESPECTFULLY SUBMITTED,

ADAM G. BRIEF
ACTING UNITED STATES TRUSTEE

Dated: March 13, 2026

*/s/ Jeffrey Gansberg*
Jeffrey Gansberg, Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
219 S. Dearborn Street, Room 873
Chicago, Illinois 60604
(312) 886-3327
jeffrey.l.gansberg@usdoj.gov